```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/29/14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

SUSEN GENCH, *doing business as*
OnlineTuturForEnglish.com,

                       Plaintiff,

           -v-

HOSTGATOR.COM, LLC; ENOM INC.;
LIQUID WEB INC.; WIRED TREE;
SITEGAP.COM; SITEGAP.NET; SITE GAP,

                       Defendants.

-----------------------------------------------------------X

No. 14 Civ. 3592 (RA)

<u>ORDER</u>

RONNIE ABRAMS, United States District Judge:

      Plaintiff *pro se* Susen Gench filed her Complaint in this matter on May 19, 2014, and an Amended Complaint on May 23, 2014. The gravamen of both the Complaint and Amended Complaint is that Defendants—various entities who provide web hosting services—have interfered with Plaintiff's website, OnlineTutorForEnglish.Com. The Amended Complaint asserts claims under the Lanham Act, specifically 15 U.S.C. § 1125(a), as well as the Anticybersquatting Consumer Protect Act, 15 U.S.C. § 1125(d), and New York's false advertising law, <u>see</u> N.Y. Gen. Bus. Law § 350. The Amended Complaint also references "Title 17, Copyright of the US Code." (Am. Compl. ¶ 4.) Plaintiff submitted over ninety exhibits with her Amended Complaint, comprising almost four hundred pages.

      On the same day Plaintiff filed her Complaint, she also submitted a proposed "Order to Show Cause for Preliminary Injunction and Temporary Restraining Order," supported by a one-page "Affirmation." In the proposed order, she seeks a preliminary injunction enjoining Defendant Liquid Web, Inc. ("Liquid Web") "from not providing access to the website of

1

plaintiff, http://OnlineTutorForEnglish.Com, [and] not providing information on how to configure the server and PTR record." (Docket no. 3.) She also seeks a temporary restraining order, enjoining Liquid Web from "blocking access to the aforementioned website, denying the PTR IP address to Plaintiff; denying information on how to configure the server." (Id.) On May 23, 2014—the same day she filed an Amended Complaint—Plaintiff submitted a letter, asking the Court to "consider" that "[t]here are only 3 days for the defendant, Liquid Web, to terminate my account, in order to remove the evidence against themselves on my web server. This order to show cause will forbid them from terminating my account without cause. The defendant will terminate my account on June 1st." (Dkt. no. 4.) Plaintiff then explained that "[i]f this motion is not ordered, I will suffer irreparable damages," because she will "lose the most critical evidence against the defendant" and that "without my website, which is currently altogether down and inactive, I will lose my business." (Id.)

"A temporary restraining order, like a preliminary injunction, 'is an extraordinary remedy never awarded as of right.'" Litwin v. OceanFreight, Inc., 865 F. Supp. 2d 385, 391 (S.D.N.Y. 2011) (quoting Salinger v. Colting, 607 F.3d 68, 79 (2d Cir. 2010)). A party seeking a temporary restraining order ""must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." Id. at 391-92.

Although the Court is sympathetic to the economic harm Plaintiff alleges she will suffer, after reviewing her submissions the Court concludes that she has failed to demonstrate that she is likely to succeed on the merits of her claims. The Court thus denies Plaintiff's request for this "extraordinary" remedy.

When reviewing a *pro se* plaintiff's complaint, the Court "must construe the complaint

2

broadly, and interpret it to raise the strongest arguments that it suggests." Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 146 (2d Cir. 2002) (alterations omitted). Here, the Court construes Plaintiff's Amended Complaint as raising six claims: copyright infringement, trademark infringement, false designation of origin, trademark dilution, a violation of the Anticybersquatting Piracy Act, and false advertising under New York law.

Each of the first four claims require Plaintiff to establish that Defendants either used Plaintiff's mark or used a similar mark that caused damage to her mark. Specifically, a copyright infringement claim requires Plaintiff to prove "copying of constituent elements of the work that are original." Gal v. Viacom Int'l, Inc., 518 F. Supp. 2d 526, 536 (S.D.N.Y. 2007). A trademark infringement claim requires, among other elements, proof that "defendant's use of its own mark will likely cause confusion with plaintiff's mark." Gruner Jahr USA Pub., a Div. of Gruner Jahr Printing & Pub. Co. v. Meredith Corp., 991 F.2d 1072, 1074 (2d Cir. 1993). False designation of origin requires proof that Defendants falsely designated Plaintiff's product as their own and caused her harm as a result. See Sun Trading Distrib. Co., Inc. v. Evidence Music, Inc., 980 F. Supp. 722, 727 (S.D.N.Y. 1997). And a trademark dilution claim requires Plaintiff to show that her mark was famous, and that Defendants used a similar mark that "whittl[ed] away" the "selling power and value" of her mark, linked her mark "to products of shoddy quality," or portrayed it "in an unwholesome or unsavory context." Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 110-11 (2d Cir. 2010).

Plaintiff does not allege that Defendants are offering competing English tutoring services or are passing off her English lessons or other content from her website as their own. Instead, the Amended Complaint alleges in substance that Defendants have failed to resolve various technical issues that prevented users from accessing Plaintiff's website. There is no allegation,

however, that Defendants are using Plaintiff's website to offer their own services; instead, Plaintiff asserts that the website is currently "down," and that no users are able to access it. (Am Compl. at 22; dkt. no. 4 at 1-2.) From these facts, the Court cannot discern how Defendants copied the "constituent elements" of Plaintiff's "work that are original." Gal, 518 F. Supp. 2d at 536. Nor can the Court say, based on the record presently before it, that Plaintiff is likely to show that Defendants are using a mark that consumers are likely to confuse with her own, see Gruner, 991 F.2d at 1074, that Defendants have harmed her by falsely designating one of her products as their own,[1] see Sun Trading, 980 F. Supp. at 727, or that Defendants have used a mark that has impaired the value of her mark, see Tiffany, 600 F.3d at 110-11.

Plaintiff's allegations are at least somewhat more consistent with a claim that Defendants violated the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), which aims to prevent "the registration as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark owners." Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 493 (2d Cir. 2000). To make out a violation of this provision, however, a plaintiff must show that the defendant registered an internet domain that is related to a well-known mark with "a bad faith intent to profit from that mark." See 15 U.S.C. § 1125(d)(1)(A). Here, although Plaintiff repeatedly asserts that Defendants acted with bad faith, the documents attached to her Amended Complaint belie this contention. These exhibits show repeated attempts by Defendants' technical support personnel to resolve Plaintiff's issues; ultimately, Defendants' representatives stated that they were unable to resolve Plaintiff's issues because she refused to provide the password to her server. (See Am. Compl., Ex. 83 at 6.)

---

[1] Plaintiff alleges that a website that indicates who owns each "domain" showed that a representative from Defendant Hostgator held her "domain." (Am. Compl. at 5.) But she does not explain how the mere fact that someone else was listed as the owner of the domain caused her harm; instead, the harm she alleges comes from the fact that users were unable to access her site, which is unrelated to who was nominally listed as the domain owner.

Plaintiff is of the view that her password was not required to address the issues she was having. (See id.) Although Plaintiff may ultimately be correct, Court cannot say from this evidence that she is likely to prove that Defendants acted with "a bad faith intent to profit" from the use of her website.

Plaintiff also alleges that Defendant Liquid Web has engaged in "deceptive advertising" by representing that she would be provided with various features—a "dedicated server, dedicated IP address, 99 percent uptime, and 24/7 hours 'Heroic Support'"—but did not live up to these promises. (Am. Compl. at 19.)  The Amended Complaint then asserts that "Defendant didn't provide a dedicated physical server with 16 GB or Giga byte, and 99 percent uptime. The IP address is not dedicated because the defendant has included other domains in it. Defendant didn't deliver 99 percent uptime, unlimited space, and 24/7 technical support." (Id.)

The Amended Complaint does not cite any exhibits nor does Plaintiff offer any other evidence in support of these claims. With only these allegations, the Court cannot say that Plaintiff is likely to succeed on the merits of her false advertising claim.[2]

Plaintiff's request for a temporary restraining order is denied. She shall promptly serve Defendants with a copy of the Summons, Amended Complaint, the unsigned Order to Show Cause (received by the Court on May 19, 2014), supporting documents (the May 19, 2014 "Affirmation" and May 23, 2014 letter to "Honorable Lewis Kaplan"), and a copy of this Order.

Once Plaintiff has served these documents on Defendants, she shall promptly submit a letter stating the date on which Defendants were served and providing proof of such service. Upon receipt of this letter, the Court will schedule a conference to address the scheduling of the

---

[2] The Court also concludes that the alleged "loss of the most critical evidence against defendant" (dkt. no. 4), does not amount to a showing of irreparable injury. Plaintiff has failed to describe what that evidence is or why it will become irretrievable once Defendants terminate her account.

case, including Plaintiff's motion for a preliminary injunction.

SO ORDERED.

Dated:     May 29, 2014
           New York, New York

_____
Ronnie Abrams
United States District Judge