UNITED STATES OF DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Susen Gench DBA OnlineTutorForEnglish.Com
*(Plaintiff)*

Hostgator.Com LLC, et al

*(Defendant)*

Case Number: 14CV3592
Susen Gench, Pro Se
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
PURSUANT TO RULE 56 (f) (1) AGAINST HOSTGATOR
FOR FAILURE TO PROPERLY ADDRESS FACTS (e), TO
DISMISS MOTION 12 (b) (6) PURSUANT TO RULE
12 (b) (7) AND RULE 19 FOR FAILURE TO JOIN A
PARTY, SITEGAP.COM;  SANCTIONS PURSUANT TO
11 (b) FRIVILOUS DEFENSE FOR UNAUTHORIZED
DOMAIN REGISTRATION, COPYRIGHTED CONTENT
INFRINGEMENT:
SATIC.REVERSE.SOFTLAYER.COM; AND FOR
DECEPTIVE ADVERTISING OF BANDWIDTH
UNDER 350-e, AND FOR FAILURE TO TIMELY SERVE
THE MOTION

Dated August 20, 2014

## False Statements in the Defendant's Answer:

"Amended Complaint (the Complaint) fails to allege HostGator used Plaintiff's trademark, registered or trafficked in Plaintiff's domain name, or copied or distributed any of Plaintiff's copyrighted materials" Page 1.

"Plaintiff's response contains **no new information** or explanation" Page 2.

"Plaintiff must allege **specific facts** supporting the conclusion HostGator violated the law and caused her harm. **Plaintiff did not do this**" Page 2.

"A Lanham Act 43(a) Infringement Claim. The Complaint fails to allege that (1) the trademark is recognized by a significant portion of the public as a source identifier for Plaintiff's services"; (2) that HostGator ever used the alleged trademark  OnlineTutorForEnglish in commerce in any— let alone as a trademark way; or (3) that Hostgator's alleged use of OnlineTutorForEnglish is likely to cause consumer confusion" Page 3.

"Plaintiff fails to explain how these facts, even if true, support an ACPA claim" Page 4

1

"*Plaintiff herself registered the domain.*" Page 4.

"the "Tech" contact does not in any way mean HostGator registered the domain in its own name" Page 4.

"The exhibits to the Complaint show that Plaintiff was always the Registrant for OnlineTutorForEnglish.com" Page 4.

"On Page 3 of the Response … none of these exhibits supports (or even relates to) the allegation that HostGator register[ed], traffic[ked] in, or use[d] the domain OnlineTutorForEnglish.com," Page 5.

"Plaintiff points to no other evidence making a plausible claim that HostGator "registered" Plaintiff's domain, **because no such evidence exists**." Page 5.

"None of these exhibits suggests in any way that HostGator copied any elements of Plaintiff's website, because it did not" Page 6.

"**D. New York Deceptive Advertising Claim** … Plaintiff does not provide any factual support or explanation for the allegations that HostGator made claims that are false or misleading. (Response at 3)" Page 6.

"As for the dedicated IP claim, the Complaint contains a single conclusory allegation… HostGator charged Plaintiff for dedicated IP, [but] didn't provide it. (i.e., data transfer) In fact, Plaintiff admitted this was true when said she "used minimal resources" that her "unused bandwidth was given away (Complaint Page 12)."

"Nowhere in the Complaint does Plaintiff allege that she was unable to reach a customer service representative when needed to." Page 8.

Footnote: "It does not however, show that HostGator failed to provide technical support" Page 8.

### False Statements in the Motion 12 (b) (6):

"Although the bulk of the Plaintiff's Amended Complaint focuses on **technical problems**" Page 2

"Plaintiff used HostGator's services for about nine months" Page 2

"Plaintiff does not allege that OnlineTutorForEnglish is inherently distinctive" Page 4

"Plaintiff failed to make anything more than a conclusory allegation of distinctiveness" Page 4

"Plaintiff has failed to allege that HostGator ever used the alleged trademark Online Tutor For English in any way" Page 5

"holding a domain name registration does not subject a **registrar** to liability under ACPA" Page 7.

"Who Is Lookup record for November 14, 2013...Yet, that document shows registrar on that date is Enom" "Plaintiff's allegations are contradicted by her own exhibits" Page 7, concerning Exhibit 13, 14 of the complaint.

"she fails to allege that HostGator copied or distributed any of those materials" Page 8

"she may have a claim against these **unnamed "criminal host(s)** but she can't claim infringement against HostGator" Page 8

"Plaintiff does not cite any facts to suggest such advertising was false or misleading" Page 10. The counsel means **unlimited bandwidth** by "such advertising".

"there is nothing to support her claim that she was not given a "dedicated IP" Page 10

"Plaintiff does not provide one set of emails or other documents HostGator failed to provide technical support" Page 11.

ARGUMENT:

Pursuant to Rule to Rule 56 (f) (1) for *failure to properly address the facts* and Rule 12 (b)

(7) for *failure to join a party* under Rule 19, Plaintiff moves to dismiss the 12 (b) (6) motion of

Defendant, Hostgator.Com LLC,  on the grounds already stated in the motion of July 9, 2014

Plaintiff filed but not docketed against which Plaintiff filed an objection motion on July 28,

2014, in reply to the defendant's answer that is served late.

In the aforementioned Plaintiff's undocketed motion of *opposition to motion to dismiss,*

Plaintiff asserts sufficient cause to dismiss the 12 (b) (6) to move for a summary judgment on

the grounds that Defendant, HostGator, has failed to defeat Plaintiff's allegations:  HostGator

infringed her domain by way of repeated *unauthorized registrations* under the name of

Hostgator  CEO—Corporate Executive Officer, Adam Farrar,  Hostgator is directly liable for

intentional failure to accurately maintain registration records (Complaint: Page 5). Whereas,

Defendant couldn't provide factual evidence against this allegation, supported with 39 Exhibits

recited in Plaintiff's Reply in *Opposition to Motion to Dismiss* of July 9, 2014.

Also, against her allegations that Defendant violated Section 350-e of Article 22 for deceptive advertising by not providing the bandwidth (server space) she paid for but instead selling it to others by not providing a dedicated IP against which she filed a complaint with the BBB or Better Business Bureau: *Exhibit 19*.  As a result, Defendant subjected Plaintiff to pernicious spam on the overly crowded server that lead to huge loss of traffic, and, in turn, the loss of advertisement value to Plaintiff: Page  9: Exhibit 30, 31, 32, 33, 34, 35, 36; Page 12-13: Exhibit 47, 48, 49; Page 21.

**Exhibit 30:** This exhibit shows, in September 2012, the plaintiff received a complaint notice from a client for a sale for $300 Plaintiff never received the initial sale receipt. Defendant refused to disclose the culprit to Plaintiff.

**Exhibit 31:**  In September 2012, to protect the site from spam, Plaintiff removed social media buttons, Facebook, Twitter, LinkedIn at the expense of losing social media promotion.

**Exhibit 32:** In February 2012, the visitors' number reached 32,203.

**Exhibit 33:** In March 2012, the traffic began falling; it dropped to 28,792;

**Exhibit 34:** In April it dropped drastically to 17,094;

**Exhibit 35:** In May it 2012 the traffic plummeted over 75 percent to 6,945;

**Exhibit 36:** In December 2012 it hit the bottom at 4,677;

**Exhibit 47:**  Google reported the downtime of the September 29th of 2012 with the traffic dipped to 148 visitors on this day.

**Exhibit 48:**

In September 2012, when the downtime was over 17 hours, Defendant never notified Plaintiff.

**Exhibit 49:**

On October 1, 2013, with the site inaccessible several hours without a notice from Defendant, Plaintiff asked for information.

Left with no support from Defendant, Plaintiff earnestly tried a dedicated server option with Defendant but Defendant didn't provide technical support information (*Exhibit 37*). The defendant counsel argues that Plaintiff used "minimal space" so she didn't need more is frivolous because Plaintiff paid for extra space for a good reason that was to protect her domain-content from abuse by millions of others on the shared server, to keep hacking off out of her space. Hostgator's advertisement of $3.74-3.96 a month hosting service triggered high demand, nevertheless at the expense of Plaintiff who paid $15 a month. **By selling its server space at an overly reduced rate and then having all those customers register their domains with Enom must have been highly profitable for both Defendants—Hostgator and Enom (see** *Exhibit: Hostgator's shared server ~11,405 million users).* Defendant advertised *unlimited bandwidth (server space), 24/7 hours technical support for the Business Plan she purchased but never disclosed that Defendant would host Plaintiff on the same shared server as millions of others were hosted at a token fee; her unused bandwidth would be given away, which caused her an irreversible damage of traffic loss due to spam and incessant server breakouts on an overly crowded server (Complaint: Page 12-13).* Plaintiff complained to Defendant several times with several tickets (she filed subpoenas for the tickets). *See Exhibit 18, 20, 21; new Exhibit: slowed down server.*

Also, Plaintiff opposes to the defendant's dismissal motion on the ground of *failure to join a party* pursuant to Rule 12 (b) (7) under Rule 19. Hostgator's dispositive motion must be dismissed because the defendant has expunged the SiteGap.Com element from the argument as a strategy, also used by Wired Tree. Plaintiff provided additional information with an attachment of over 800 bogus-websites' addresses where her domain and content were mapped to *SiteGap.Com (Opposition to Motion to Dismiss Wired Tree, August 8, 201),* upon information and belief. Plaintiff requested the Court to subpoena Wired Tree, and herein, Hesitator, to turn in Site Gap records. Site Gap holds these websites that are only for redirecting unsuspected visitors to other sites for advertisement by enticing visitors to either provide personal data in contact forms or click advertisement links on pages with no certified authoritative content. The Site Gap owner, Mr. Paul Osborne, appears to be burdened with the liability of domain infringement and spam for whom Hostgator is equally liable as much as Wired Tree. Because, WebsiteWelcome.Com, Hostgator's bulk email vendor, hosted Site Gap under the masked domain: *50.22.194.100-static.reverse.softlayers.com,* where Hesitator transferred Plaintiff's domain and copyrighted content between 2011 and 2014: the Complaint, Page 11-12.

**"4. 15 US Code, Section 1125 (d); Title 17 US Code, Copyright of the US Code: Defendants infringed Plaintiff's domain and content:** Plaintiff has never purchased or registered the mask: *50.22.194.100-static.reverse.softlayer.com*. First Defendant mapped Plaintiff to the above IP of their bulk-email operation *(WebsiteWelcome.Com)* and then uploaded her content to it.

"This complaint is hereby filed for an injunction, in accordance with the Section 43 of the Act (a) and Section 1125 [d]--Anti-Cybersquatting Piracy Act (ACPA), to forbid Defendants from infringing Plaintiff's trademark and pay for all damages. Plaintiff claims Defendants have infringed and diluted the trademark and service mark in violation of the Act 15 U.S.C Section 1125(a) and (d). 1) The trademark and service mark, *Online Tutor For English* and *OnlineTutorForEnglish.Com*, is valid; 2) Defendants registered the Top Level Domain (TLD) in

6

bad faith in order to profit from the mark; 3) the domain was distinctive when Defendants registered the domain... Under 15 US Code, Section 1125 (a), Defendants are liable for false designations of origin, false descriptions and dilution of Plaintiff's mark, *Online Tutor For English*, and the TLD, *OnlineTutorForEnglish.Com*.   "Plaintiff seeks the court consider factors such as, but not limited to:

Under 15 US Code, Section 1125 (d) (1) (A), Defendants have had bad faith intent to profit from the mark and registered, trafficked, and used her TLD. Title 17, Copyright of the US Code, under which Plaintiff holds intellectual property rights to the mark. "

This above clip from the complaint (Page 4) sufficiently stands out on its own to oppose the defendant's dismissal of the complaint based on the allegation that Amended Complaint fails to state a claim is false. First, to clarify the record, there is literally no change made to the amended complaint in terms of content. The only change made to the amended complaint is to the form. The Court has both copies and thus Plaintiff states herein that both copies are identical in terms of content. That stated, Plaintiff uses the term "Complaint", "the complaint" or "The Complaint" for the current copy modified on May 24, 2014, defendants have received and abusively used "Amended Complaint" in excess in their dispositive motions. That stated, the complaint clearly charges Hostgator with the violation of *unauthorized transfer* or unauthorized *domain registration,* which, the 15 US. Code, Section 1125 (d) states in paragraph **(B) (i)** "the person's offer to transfer, sell, or otherwise assign the domain name to ... any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct"

Plaintiff opposes to the defendant's false statements aforementioned over the factual evidence supported with the EXHIBITS recited from the complaint in the *Opposition to Motion to Dismiss dated July 9, 2014* against Hostgator, attached to this document with 39 Exhibits in

7

the *Opposition to Motion to Dismiss, dated July 9, 2014.*

**EXHIBIT 62:** Page 15 displays the registrar record for the ownership of *OnlineTutorForEnglish.Com* by the defendant. The Hostgator CEO is the contact person, along with the Hostgator email address and postal address, and the telephone number for contact. This violation is clearly spelled out in the 15 US Code, Section 1125 (d) (VII) "the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;"

The date is September 12, 2012, the time interval of when Plaintiff attempted to transfer back to Enom from Defendant, but both defendants forged her domain transfer, having a mutual interest in it, violating the ACPA Section 1125 (d) (B) (i) "In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to—

(I) the trademark or other intellectual property rights of the person, if any, in the domain name"

**EXHIBIT 63:** Page 15 shows that on December 31, 2013 Hostgator still held Plaintiff's domain. Under the ACPA:

"**(1) (A)** A person shall be liable in a civil action by the owner of a mark... if that person

(ii) registers, traffics in, or uses a domain name that—

(I)     in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark"

Plaintiff's domain was "distinctive" at the time of unauthorized registrations by Defendant Hostgator, for the reasons she explains in the complaint: the time duration (8 years)

widely used for its content in the US geographic location Google Analytics support (Page 4-5).

Plaintiff states on Page 6: "**2. 15 US Code, Section 1125 (d) (1) (A) (ii) (I) (B) (i) (VI): Defendants diverted Plaintiff's traffic and content to third parties for commercial gain and with an intent for infringing content for commercial benefit**".

STATIC.REVERSE.SOFTLAYER.COM

Under mask domains notated *IP.IP.IP.IP-static.reverse.softlayer.com, such as 50.22.194.100-static.reverse.softlayer.com*, *WebsiteWelcome-Hostgator* shielded *Site Gap.Com* for bulk-email operation. Hosgator uploaded Plaintiff's domain and content to this mask, consistently used by Softlayer.Com ,who is/was a GI Company that also owns Hostgator, partnered with Hostgator: *Exhibit: Hostgator's partner, Softlayer*. After Plaintiff complained, in Hosgator still continued the offense Plaintiff stated on Page 6, *Exhibit 18,* in that:

**2. 15 US Code, Section 1125 (d) (1) (A) (I) (ii) (B) (i) (VI): Defendants diverted Plaintiff's traffic and content to third parties for commercial gain and with an intent for infringing content for commercial benefit** by creating of confusion as to source, sponsorship or affiliation, or endorsement of the site.

On Page 5 in the Complaint Plaintiff states: "**(II) Defendants have had bad faith in order to profit from the mark:**

**1. 15 US Code. Section 1125 (d) (1) (B) (i) (VII): Defendants with intentional failure, have not maintained accurate Who Is records**"

On Page 11 this statement is included: "**15 US Code, Section 1125 (d); Title 17 US Code, Copyright of the US Code: Defendants infringed Plaintiff's domain and content**".

Plaintiff has never purchased or registered the mask: *50.22.194.100-static.reverse.softlayer.com*. Defendant sells *static-reverse.sofylayer.com* masked domains to advertisers that shield themselves from liability for spam", which is punishable under the US

9

Law of: CAN-SPAM (2004). What is standing for Plaintiff's complaint is first, Hosgator infringed her by registering it; second, infringed her content by uploading it to his bulk-email *WebsiteWelcome.Com* server where *SiteGap.Com* was hosted under the aforementioned mask domain.

For a dispositive motion of Rule 12 (b) (6), the defense must establish a "plausible" factual ground to defeat Plaintiff's facts under Rule 56, and in order for that, the defense should have addressed SiteGap.Com. Further, no case law supports the use of Rule 12 (b) (6) so liberally and, based on lacking legal theories by the defendant's counsel, which is an exaggeration mostly speaking. Considering Plaintiff is pro se and for that matter her legal theory references must be taken justly by the Court as they sufficiently address the defendant's violations (see Page 4-11; Page 12-13). See: Conley v. Gibson (1957); Davis v. Wechler; Elmor v. McCammon (1986); Maty v. Graselli Chemical Co (1938); Puckett v. Cux (1972). Otherwise, Plaintiff calls on the Court  Defendant's legal theory defense is misleading because Plaintiff's complaint offers more than "plausible" evidence, evidentiary and material loss, even in accordance with the strict standard of the 2005 Supreme Court version of *Conley v.Gibson*.

The counsel attempts to oppose the factual evidence presented in the EXHIBITS by naming just 8 out of 39 (Counsel's argument: Page 6), nevertheless, frivolously.

**Counsel:** "Exhibit 18 is an email from Plaintiff to HostGator and a response from HostGator explaining that "no content was downloaded—illegally or not—to any other servers."

**Plaintiff:** The email content is omitted by the counsel because it articulates the infringement of the IP addresses or mask domain, *"50.22.194.100-*

*static.reverse.softlayer.com"* where her content was uploaded to. Plaintiff complained to

the BBB for a takedown notice and Hesitator couldn't deny the content infringement: the

complaint Page 7, Exhibit 19; Exhibit 20.

**Counsel:** "Exhibit 24 and 25 are emails between Plaintiff and Liquid Web that do not in

any way show copying of any material by HostGator. "

**Plaintiff:** Exhibit 24 and 25 support domain infringement events;  the *suspension notice*

*of November 1, 2014* by Hostgator who shot down her website for two days, because

Hostgator was still holding the ownership of her domain. Further, the exhibits show an IP

address belonging to Hostgator-WebsiteWelcome.Com proving her email client is mapped

to Defendant.

**Counsel:** "Exhibit 28 is a "Who Is" record from 3/2/2014 that also does not show

copying in any way."

**Plaintiff:** Again, Counsel uses an irrelevant exhibit that references to *Hostgator-*

*WebsiteWelcome.Com* for mapping Plaintiff's email client to Defendant as of January 5,

2014.

**Counsel:** "Exhibit 29 is not readable."

**Plaintiff:** it's fade but still readable, which proves Hostgator-WebsiteWelcome.Com

forged Plaintiff's clients' email addresses by converting them to the domain of

*WebsiteWelcome.Com*, such as *xxxx@WebsiteWelcome.Com* . As a result, Plaintiff has lost

all her clients to Defendant.

**Counsel:** "Exhibit 30 is an email exchange between a customer and the Plaintiff unread

to any alleged copying. "

**Plaintiff:** This exhibit shows the customer made a payment for $300 but Plaintiff didn't receive it. For content infringement, Counsel could use *Exhibit 19,* displaying pages copied to the mask domain, *50.22.194.100-static.reverse.softlayer.com.*

**Counsel:** "Exhibits 61 and 65 are "WhoIs" lookups showing that Plaintiff's IP address was correctly mapped to servers operated by Softlayer Technologies, Inc., from whom HostGator leased server space. "

**Plaintiff:**   Exhibit 65 proves Plaintiff's domain reverses to "*static.reverse.softlayer.com*" with the IP *"50.22.194.100"*. Exhibit 65 proves **all Defendants are pointed to Plaintiff's domain. They are all "unauthorized registrants".**  Moreover this exhibit proves Plaintiff's domain and website is altogether mapped to Hostgator's servers, including WebsiteWelcome.Com,  with one email client server to Liquid Web and showing  Enom as the registrar as of January 5, 2014, proving all Defendants have conspired in the domain and content infringement.

Counsel states: ***"Plaintiff herself registered the domain."***  (Answer: Page 4). Of course, Plaintiff registered her domain regularly every year. This is not a fact against Plaintiff but to her credit because it proves she has complied with the ICANN guidelines. She has lawfully registered her domain as the verified owner or "authorized registrant". The counsel fails to make defense against the "unauthorized registration" of Hostgator, the cause of this law suit. The counsel attempts to dismiss Plaintiff's complaint against Hostgator's CEO, Adam Farrar, stating that Plaintiff herself registered the domain all the time is frivolous. Because, anyone who went into her host records in the Enom registry and pointed *OnlineTutorForEnglish.Com* to their own server IP addresses became a registrant or

OnlineTutorForEnglish.Com.  Plaintiff explains in the complaint in detail how *"name servers"* or connection points from one server to her server is created by way of using the IP addresses: Page 6-7; and Page 14-15.

Moreover, the defendant frivolously argues the CEO, Adam Farrar, is pointed to "Tech" support contact but not administrative contact. Appearing under Tech Support is a common ploy abused by web hosts on which ample literature exists. "Tech" support is merely a radio button option manipulated in the Registration Form of Enom in which the registrant, Adam Farrar, already entered his name on the top of the form.

To sum it up, to dismiss the counsel, Plaintiff asserts the fact that Hostgator registered her domain without authorization and, further, pointed her domain to others among whom Site Gap is one Plaintiff discovered, supported further in:

**Exhibit 28, Page 9:** It shows how Plaintiff was hijacked, mapped to *SiteGap.Com*; then to Hostgator-*WebsiteWelcome.Com*, and Liquid Web to Wired Tree-Site Gap.

**Exhibit 29, Page 9:** The exhibit shows a letter the plaintiff attempted to send her clients but didn't arrive at their destinations because Defendant altered her clients' email addresses to *@WebsiteWelcome.Com*, in order to mislead the recipient about the origin of the message."

"Defendants forged the MX-Email Exchange protocol, an integral part of the DNS, by redirecting *OnlineTutorForEnglish.Com* to the mask, *http://50.22.194.100-static-reverse-softlayer.com,*" masking SiteGap.Com, and, as a result, Plaintiff has lost email addresses of all her clients to Defendant.

In the presence of evidentiary proof presented in the exhibits as to *50.22.194.100-static.reverse.softlayer.com*, in Exhibit 65 and *Exhibit IP: 50.22.194.100*; also proved in Exhibit 18, 19, 21, and 20. These are evidentiary facts. Exhibit 23 shows the *suspension notice* of Hostgator triggered from the defendant's server. This is a material fact, supporting Hosgator still held her domain.

Replete with false statements, the argument is anything but frivolous so as to for the counsel to stuff it with verbatim "conclusory", "because no such evidence exists" without facts to a degree of banality. 39 Exhibits point by point are evidentiary directly supporting the ACPA and Section 350-e violations. For the counsel to dismiss a fact he should have pointed out Defendant's facts. For example, Counsel states "Plaintiff failed to allege domain infringement in any way against Hostgator", but the Complaint is abundant with evidence: Exhibit 12, 18, 19, 20, 21, 23, along with the Who Is records or Enom Registration Records: 9, 10, 11, 13, 14, 62, 64, 65, and 66. Furthermore, Counsel argues Hostgator's registration of her domain as Registrar is not a violation under ACPA is frivolous because, first, Hostagor was/is not a Domain Registrar but only a reseller, not certified by the ICANN or Internet Corporation of Assigned Names and Numbers to act in that capacity. Second, Domain Registrars do not act under the capacity of domain registrants.

As to the evidence from the complaint and recited herein in previous motions, Defendant has repeatedly registered or transferred her domain since 2011 until the present but, nevertheless, Enom blocked Plaintiff's access to the host records for her to stop it, and her subpoenas for discovery of the unauthorized registrations are still not granted by the Court. Under this circumstance, the latest transfer known to Plaintiff occurred on April 2

14

2014.

This defendant is referenced 42 times as spelled out "Hostgator or Hostgator.Com or Hostgator.Com LLC" in the complaint. 17 pages of the complaint spell out Hostgator: 1-13; 15-16; 18, 21, and 25. The 27 Exhibits are listed in *the Opposition to Dismiss Hostgator's Motion of July 9, 2014,* Page 3-7.

## Defendant SiteGap.Com or SiteGap.Net or Site Gap

Concerning the dubious history of internet criminal activity, domain hijacking and spam, punishable under the US laws, upon information and belief, Plaintiff submitted Site Gap's website URL addresses or Universal Resource Locators, for the owner, Paul Osborne, that appear under *host2.sitegap.com; host3.sitegap.com.* Plaintiff is mapped from *Hostgator-WebsiteWelcome.Com* and Wired Tree to Site Gap *(Exhibit 65)*. Visitors clicking hyperlinks on these sites are redirected to other locations to false email addresses to disclose private data, redirecting them to second level domains: *host2.sitegap.com* and *host3.sitegap.com.* See *Exhibit A: Host2.SiteGap.Com-WredTree.Com*: Plaintiff's Reply to Wired Tree dated August 8, 2014).

Defendant, Hostgator, has expunged Site Gap with a deliberate disregard for an inclusive Site Gap inclusive defense. Keeping in mind that SiteGap.Com is indispensable also for Hostgator as much as Wired Tree, to make a defense against Plaintiff. Nevertheless, with an intentional failure not to do so makes the dismissal frivolous, punishable with sanctions pursuant to Rule 11 (b).

In the absence of Site Gap from Defendant's Motion and Answer, Hostgator, fails *to properly address the factual evidence* in the plaintiff's complaint supported by the exhibits

referenced in the opposition response.  Pursuant to Rule 56 (e) *failure to properly address the*

*fact[s]*, Plaintiff requests the Court grant a summary judgment under Rule 56 (f) (1).

## Under Rule 19, Required Joinder of Parties

When the joinder, SiteGap.Com, is feasible " if (A) in that person's absence, the court

cannot accord complete relief to Plaintiff; or (B) that Plaintiff claims an interest relating to the

subject of the action and is so situated that disposing of the action in this defendant's absence

may:

(i) as a practical matter impair or impede the plaintiff to protect her interest; or   (ii)

leave the plaintiff to subject to a substantial risk of incurring double, multiple, or otherwise

inconsistent obligations because of the interest ".

## The Counsel's Letter of Compromise

In the *Opposition to Motion to Dismiss* on Page 8 Plaintiff included the letter Counsel,

Tom M. Monagan, sent to her and a copy to the Court.  Whereas, Counsel frivolously states that

there's no new information in Plaintiff's opposition in his answer (Page 9). The counsel sent this

letter to Plaintiff and submitted a copy to the Court on June 24, 2014.  This letter offers a token

compromise and a statement for Plaintiff to withdraw the complaint against Hosgator *(Exhibit:*

*Hesitator' Letter of Compromise)*. With this letter, Defendant must have admitted damages

were inflicted on Plaintiff, and thus the 12 (b) (6) motion is not justified under the *Gibson v.*

*Conley* that *unless the pleading can assert no set of facts it beyond the doubt in order to be*

*granted relief.*  Honorable Abrams' rule states letters between the parties will not be sent to

the Judge.  Moreover, Mr. Monagan doesn't provide his full name and address in the letter,

which is profoundly inappropriate in this context for an attorney: *Exhibit: Hosgator's Counsel's*

*Letter*. Neither in the answer or dispositive motion, Counsel makes any reference to this letter but falsely states Plaintiff provided no new information.

**The Deadline for the Answer passed**

Counsel served the answer on Plaintiff 9 days late by mail. On the envelope, no date stamp appears but the company's logo overshadows the date: *Exhibit: Overshadowed Mailing Date*.  The deadline ended on July 30, 2014, the counsel didn't notify the plaintiff or the court. Pursuant to Rule 11 (b), Plaintiff requests the Court sanction the counsel to serve the papers timely so that sufficient time will be afforded to Plaintiff.

## LOST CURRENT SERVER LOCATION: EXHIBIT 81, 82 PAGE 18

Plaintiff restates to the Court that the current server location of her domain is lost, unknown to her. The complaint, with Exhibit 81, stated: "On April 2, 2014 cPanel was replaced, meaning that the host has changed so Plaintiff is not hosted on the Liquid Web server. This was an unauthorized transfer again but Liquid Web never disclosed it to Plaintiff (Exhibit 81, 82). In conclusion, in the light of the above information, pursuant to Rule 56 (f) (1), Plaintiff requests the Court:

(1) Dismiss the 12 (b) (6) of Hostgator's motion.

(2) Order Defendants disclose the current location of Plaintiff's domain.

(3) Grant a summary judgment on the merits of this motion.

Respectfully submitted,

Susen Gench, Pro Se,

August 21, 2014

# EXHIBIT

## Overshadowed Mailing Date

**Norvell IP** llc
Intellectual Property Law
79 Ash Street, Northfield, Ill 60093

Susen Gench
82-45 135th Street, Apt. 2J
Kew Gardens, New York 11435



**Norvell IP** llc
Intellectual Property Law

$1.40  US POSTAGE
FIRST-CLASS

UNITED STATES OF DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case Number: 14CV3592
Susen Gench, Pro Se Litigant
Dated: July 9, 2014


Susen Gench DBA OnlineTutorForEnglish.Com
*(Plaintiff)*

Hostgator.Com LLC, et al
*(Defendant)*


## MOTION IN OPPOSITION TO DISMISS

Motion in Opposition to dismiss the 12 (b) (6) Pursuant to Rule 12 (f) (g)
Motion to Strike the insufficient defense because:

**(1) The motion is frivolous: Plaintiff made sufficient factual analysis in the claim.**

**(2) The facts presented in the Complaint are well supported.**

**(3) Plaintiff is in the discovery state. Plaintiff has filed motions.**

Plaintiff files this motion in opposition to dismiss the motion of Defendant, Hostgator.Com LLC, filed under FRCP 12 (b) (6), pursuant to Rule 12 (f) (g), because the defense is insufficient. Rule 11 sanctions against 12 (b) (6) that a party should not file a frivolous motion unless it can argue in good faith that the pleading has failed to state a claim upon which relief can be granted. Plaintiff has made detailed factual analysis supported with 39 EXHIBITS against the defendant in the Claim, as referenced in this motion below, considering the most stringent standard of Conley v. Gibson overruled by the Supreme Court in 2007.

In the *Conley v. Gibson* (1957) the standard is 1) Plaintiff's allegations are

1

true 2) Facts are construed as most favorable to the plaintiff 3) Cannot dismiss case unless proven beyond a doubt that plaintiff can prove no set of facts. In 2007, the United States Supreme Court overruled Conley creating a new, stricter standard of a pleading's required specificity. Under the standard the Court set forth in Conley, a complaint need only state facts which make it "conceivable" that it could prove its legal claims that is, that a court could only dismiss a claim if it appeared, beyond a doubt, that the plaintiff would be able to prove "no set of facts" in support of her claim that would entitle her to relief.

In *Bell Atlantic Corp. v. Twombly* (2007) the court adopted a more strict "plausibility" standard, requiring in this case "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement". First, even under the *Bell Atlantic Corp. v. Twombly* the damages Plaintiff states are material and evidentiary. They are plausible supported with sufficient evidence in the Complaint. Second, Plaintiff is in the discovery state currently, and, one defendant still could not be served on with the summons and complaint that is SiteGap.Com Defendant hosted, who infringed Plaintiff's domain, but the defense fails to include any argument on this defendant.

Nevertheless, the defense attempts to dismiss well pleaded damages in the Claim by excluding facts sufficiently supported in the 96 EXHIBITS of which 39 are against the defendant. In *Partridge v. Two Unknown Police Officers*, 5th Circuit (1986) ruled: it must accept all well pleaded facts as true and view them in the light most favorable to plaintiff. Cannot uphold dismissal unless it appears beyond doubt that plaintiff can prove no set of facts in support of claim.

First and for most, (1) Defendant has infringed Plaintiff's top level domain. The defendant registered  and transferred her domain about a-three-year time period between January 2011 and December 2013, and with intentional failure, didn't maintain accurate domain registrar records,  in violation of the ACPA or

2

Anti-Cyber Squatting Prevention Act: 15 U.S.C., Section 1125 (d).

(2) As to the damages under the 350-a of Article 22, the defendant significantly misrepresented the product and services in terms of IP address, bandwidth and technical support, causing material damages to the plaintiff.

**15 U.S.C.S. 1125 (d) (1) (A) (B):**

**EXHIBIT 13:** The Complaint or C-Page, 5. Defendant replaced Plantiff's postal address, email address and phone number with those of the defendant. The Hostgator CEO, Adam Farrar, impersonated Plaintiff for over two years between September 2012 and December 2013. This exhibit displays--for contact--the address, email and phone number of the defendant and the CEO as the contact person, instead of those for Plaintiff, in the domain registry.

**EXHIBIT 14:** Page C-5 shows the defendant still falsified Plaintiff's identity and reregistered her domain with Enom over and over again as of November 20, 2013.

**EXHIBIT 15:** Page C-5 illustrates Enom, for whom Hostgator is a key reseller, blocked Plaintiff's access to her registrar records preventing her from discovery of unauthorized registrants of her domain. Plaintiff notified Enom to unblock the access.

**EXHIBIT 16:** Page C-6, is an email displaying the denial of access by Enom, shielding the defendant from liability.

**EXHIBIT 18:** Page C-7, 8 displays 2 email complaints that her content was uploaded to a mask domain under *staticreverse.com—the Hostgator data center managed by Softlayer,* which she never purchased a mask domain hiding the host from view. This mask is the Hostgator's bulk email vendor, *WebsiteWelcome.Com*—see **EXHIBIT 65** which shows *Hostgator-WebsiteWelcome.Com* hosted *SiteGap.Com* at this location to whom the content of

3

the Plaintiff was uploaded, who is a defendant in this Complaint.

**EXHIBIT 19:** C-Page 7 displays the webpages reported to the BBB or Better Business Bureau in the complaint of December 22, 2012. Plaintiff discovered from Google analytics that her website was, literally, uploaded to the aforementioned mask domain.

**EXHIBIT 20:** Page C-7 shows the email in which the defendant accepts that her IP address reversed to the Softlayer IP address but not to Plaintiff. When the Webhost IP address changes, it's a material evidence for the fact that the webhost has changed, on October 1, 2012.

**EXHIBIT 21:** Page C-8 displays the page of an initial complaint filed with the BBB over the missing IP address or DNS (Name Server Records), because her domain didn't point to Defendant, on December 22, 2012.

**EXHIBIT 22:** C-Page 8 relates to the event of September 7, 2013 when a sudden huge traffic drop occurred, again. Plaintiff reported it to the defendant; filed another complaint to get the defendant address the issues, along with Enom. This complaint will be presented to the court if it's necessary. Then she terminated with the defendant urgently.

**EXHIBIT 23:** Page C-8 shows the *suspension event of November 1, 2013,* the day Plaintiff attempted to update the webhost record to Liquid Web in the Enom registry but, nevertheless, her website was suspended by Defendant who still held her domain ownership as of November 2013. Her site was shot down for 2 days between November 1st and 2nd, 2013. This record is in discovery, the subpoena for the defendant to disclose this record is pending.

**EXHIBIT 24:** C-Page 8 shows the IP address of WebsiteWelcome.Com in the place of answer authority, meaning that *Hostgator-WebsiteWelcome.Com* is mapped to Plaintiff's domain with a secondary IP for email exchange, and the primary IP address of Liquid Web. This was the status of Plaintiff's DNS or

4

Domain System Record at the time of the aforementioned suspension the Start-Of-Authority--SOA showed the defendant was still the owner, as well as an IP address of *WebsiteWelcome.Com* (92.185.64.223) in the Answer Section mapped to Plaintiff.

    **EXHIBIT 25:** Page 8, shows the email pertaining to the matter of aforementioned IP of Hostgator-Website Welcome.

    **EXHIBIT 28:** C-Page 9 depicts how Plaintiff is pointed on the *Hostgator-WebsiteWelcome.Com* server (Softlayer is the ISP or Internet Service Provider) to *Wired Tree* where she is mapped to *SiteGap.Com*; then *Hostgator* to *WebsiteWelcome.Com*, and *Liquid Web* to *Wired Tree-Site Gap* by way of several name servers the defendants devised on their servers.

    **EXHIBIT 29:** C-Page 9 shows an email Plaintiff attempted to send to her clients but was converted to the email address of WebsiteWelcome.Com as in *@WebsiteWelcome.Com,* because the defendant forged the MX-Email Exchange protocol by redirecting *OnlineTutorForEnglish.Com* to *WebSiteWelcome.Com* and, as a result, Plaintiff has lost email addresses of all her clients to Defendant.

**Factual Evidence in the Complaint is sufficient:**

    **EXHIBIT 30:** C-Page 9 shows an email complaint Plaintiff received from a client on September 2012 over a sale transaction for which Plaintiff never received a receipt. Defendant refused to disclose the culprit.

**Defendant redirected her traffic:**

    **EXHIBIT 32:** C-Page 9. In February 2012, visitors reached 32,203.

    **EXHIBIT 33:** C-Page 9. In March 2012, the traffic began falling; it dropped to 28,792.

    **EXHIBIT 34:** C-Page 9. In April it dropped drastically to 17,094.

    **EXHIBIT 35:** C-Page 9. In May it 2012 the traffic plummeted over 75 percent to 6,945.

5

**EXHIBIT 36:** C-Page 9. In December 2012 it hit the bottom at 4,677.

**EXHIBIT 37:** C-Page 10 shows an email of Plaintiff's inquiry about dedicated server possibility for her site but Defendant provided insufficient information on the technical support for dedicated servers.

**EXHIBIT 38:** C-Page 10 shows an email Plaintiff sent to the defendant over the issue of IP addresses of more mask domains of static-reverse.softlayer.com taking up into her space but got no attention, in August 2013.

**EXHIBIT 49:** C-Page 13 is an email sent to Defendant because the site was down on October 1, 2012 along with a second email urging Defendant to address the issues. 9 issues were submitted: the IP is not dedicated; the unauthorized registration of Plaintiff's domain by the defendant; 2-unauthorized charges for domain renewal; 3-defendant's obstruction of Plaintiff's attempt to transfer out her domain from Hostgator; 4-Hostgator placed 3 different domains in one IP so her IP is not dedicated; 5-one of Plaintiff's domain was hacked, not having an individual IP; 6-Defendant neglected to scan the server for spam; 7-Plaintiff's email boxes are hacked; 8-Defendant didn't respond to the problems. 9- Technicians provided no help over the phone.

**EXHIBIT 61:** C-Page 15 depicts how Plaintiff is pointed, with her IP address, to *static-reverse.soflayer.com* from the *WebsiteWelcome.Com* server to h*ttp://50.22.194.100-static-reverse.softlayer.com*, masking the host, S*iteGap.Com*.

**EXHIBIT 62:** Page 15 displays the registrar record for the ownership of *OnlineTutorForEnglish.Com* by the defendant. The Hostgator CEO is the contact person, along with the Hostgator email address and postal address, and the telephone number for contact. The date is September 12, 2012, the time interval of when Plaintiff attempted to transfer back to Enom from Defendant, so both defendants forged her domain transfer, having a mutual interest in it.

**EXHIBIT 63:** Page 15 shows that on December 31, 2013 Hostgator still

held Plaintiff's domain.

**EXHIBIT 65:** C-Page 15 indicates the update of January 5th, 2014, the date *Hostgator-WebsiteWelcome.Com*--still is mapped to Plaintiff's domain, along with the rest of the defendants: Liquid Web: 67.225.164.247; Wired Tree: 96.30.59.121; *SiteGap.Com* on the *Website Welcome* server: 50.22.194.100; Hostgator: 192.185.52.158 and 192.185.52.16; Mail Exchange at the LiquidWeb Server IP mapped to Plaintiff: 67.225.165.68.

**EXHIBIT 92:** Page 21 is the registrar record reporting the date of January 7, 2011 when Hostgator became the webhost. But no IP addresses of Hostgator points to her domain, an indication that *Wired Tree-SiteGap.Com* is holding her domain.

**The facts presented in the Complaint are well supported.**

In the Complaint, the Plaintiff's claims are supported with 39 EXHIBITS against Defendant that are evidentiary for the allegations of damages: Defendant has infringed Plaintiff's domain: 15 U.S.C. Section. 1125 (d) and content US Code 17 Copyright; didn't provide an *adequate* or *reasonable* technical support: 350-a of [Article 22].

The defense makes attempts to exclude, distort, or oversimplify the damages that compelled Plaintiff to bring this lawsuit against Defendant. For example, the counsel states Defendant hosted Plaintiff for 9 months is false. The defendant hosted Plaintiff for 32 months, almost 3 years, between January 1, 2011 and September 7, 2013. The misrepresentation of this fact by the defense is a material evidence adding up to the nature of a frivolous motion under Rule 11, deserving sanctions. Further, to illustrate the distortion of the evidentiary facts, the Counsel states that Defendant didn't give away her unused space but provided sufficient space is not good defense because the defendant sold her space to others she paid for resulting in an overly crowded server that broke down and got hacked, the

7

EXHIBITS support. Also the recent literature of cases penalizing webhosts for deliberate misrepresentation of their product exists--see EXHIBIT 17. See the Baltimore Judge's decision that severely panelized a webhosting company for prolonged service interruptions of 6000 customers (Complaint: Page 22). Plaintiff suffered material damages over her space taken away. For example pernicious spam (Page 9), and because of that, she removed all her social media buttons at the expense of losing social media promotion (EXHIBIT 31).

The complaints filed with the BBB and facts supported with the EXHIBITS substantiate the evidence for domain and content infringement for almost 3 years Plaintiff has been a customer of Defendant.

Irrational, the defense sounds callous to the fact that in the discovery state filing a 12 (b) (6) may generate more acrimony forcing Plaintiff to seek just and equitable set of actions.

Plaintiff has suffered the damages because of unauthorized registrations of her domain by Defendant facilitated by Enom who is also a defendant in this case and who has not yet answered to the Complaint, of whom Hostgator is a key business partner.  On the other hand, the denial of the damages for Plaintiff's plight of about three years is not sufficiently convincing for an expeditious outcome under Rule 12 (b) (6). The defense, still, must have recognized the failure of the defendant with the *letter of compromise,* further bellying this motion.

Plaintiff's case is similar to Louis Vuitton against Akanoc Solutions and Managed Solutions (2007). See Complaint: Page 22. The defendants have infringed her mark and copyrighted content, and allowed infringing of the culprits all in bad faith intent for financial gain, and defrauded her.

**Plaintiff is in the discovery state**:

Her subpoenas are pending. One defendant, SiteGap.Com or SiteGap.Net or Site Gap, has still not been served on. Plaintiff has filed motions. As invariably

demonstrated in the EXHIBITS, Hostgator mapped Plaintiff and uploaded her content to this defendant. The act of "uploading" copyrighted content to another website unaffiliated with the content owner constitutes infringement punishable under 15 U.S.C. Code 1125 (d)—see EXHIBIT 18, 24, 25, 28, 29, 30, 61, 65.

All in all, the defense makes one reference, EXHIBIT 50 out of 96, which supports the infringement claim against Liquid Web (Page 1-2) and Wired Tree (Page 3). Otherwise, the exclusion of facts burdens the defendant's motion with the failure of insufficient defense. In conclusion, unless in good faith Defendant can argue that Plaintiff has failed to state a claim upon which relief can be granted, filing a motion under the FRCP 12 (b) (6) is frivolous. Plaintiff requests the court dismiss this motion.

Respectfully submitted.

Susen Gench, Pro Se Litigant

July 9, 2014

# E X H I B I T 65

## site info

**Web Site Information :.**

▸ Site Info  ▸ Whois  ▸ Traceroute  ▸ RBL Check

| Site Info | Who Is | Trace Route | RBL Check | What's My IP? |

**Enter Web Site URL Address:**

onlinetutorforenglish.com



# ENGLISH TUTOR for SAT-ENGLISH, WRITING, TOEFL, SPOKEN ENGLISH

**Description:** US native English tutors tutor for English, SAT-English, writing and TOEFL for affordable fees. Free LIVE CHAT and learning materials for writing and spoken English enhanced with grammar, video lessons and quizzes.

**Keywords:** english tutor online, sat-english, writing, toefl, spoken english, live-chat

**Tags:** onlinetutorforenglish, english, tutor, writing, toefl, spoken, sat, online, blue, chat, live, essay, lessons, vocabulary, essays, sue, faqblueb, follow, enroll, aboutusblue, contact, site, map, gench, twitter, american, business, rep, video, conversation, tips, preparation, write, good, marketing, read, learning, native, list, help,

## Onlinetutorforenglish.com

Content Revalency: Title: 85.71%  Description: 62.50%  Keywords: 100.00% | Document size: 29,276 bytes
Alexa rank: #236,295  Quantcast rank: #999,691
More info: Whois - Trace Route - RBL Check

## ONLINETUTORFORENGLISH.COM - Site Location

| | |
|---|---|
| **Country/Flag** | 🇺🇸 United States |
| **City/Region/Zip Code** | Dallas, Texas 75244 |
| **Organization** | Website Welcome |
| **Internet Service Provider** | SoftLayer Technologies |

## ONLINETUTORFORENGLISH.COM - Domain Information

| | |
|---|---|
| **Domain** | ONLINETUTORFORENGLISH.COM<br>[ Traceroute  RBL/DNSBL lookup ] |
| **Registrar** | ENOM, INC. |
| **Registrar URL** | http://www.enom.com |
| **Whois server** | whois.enom.com |
| **Created** | 12-Sep-2006 |
| **Updated** | 05-Jan-2014 |

| | |
|---|---|
| Expires | 12-Sep-2015 |
| Time Left | 595 days 18 hours 53 minutes |
| Status | clientTransferProhibited |
| DNS servers | NS.ONLINETUTORFORENGLISH.COM 67.225.164.247 NS2.ONLINETUTORFORENGLISH.COM 96.30.59.121 |

## ONLINETUTORFORENGLISH.COM - DNS Information

| | |
|---|---|
| IP Address | 50.22.194.100 ~ Whois - Trace Route - RBL Check |
| Domain Name Servers | ns2654.hostgator.com 192.185.52.158 ns2653.hostgator.com 192.185.52.16 |
| Mail Exchange | onlinetutorforenglish.com 67.225.165.68 |

## Site Response Header

| | |
|---|---|
| Response | HTTP/1.1 200 OK |
| Server | Apache mod_fcgid/2.3.6 mod_auth_passthrough/2.1 mod_bwlimited/1.4 FrontPage/5.0.2.2635 |
| Date | Fri, 15 Apr 2011 06:21:14 GMT |
| Content-Type | text/html |

LQ Counter   IP Index   TLD Index   Domain Index   Site Index

Copyright © 2014 dawhois.com

# EXHIBIT

Hostgator's shared server: ~11,405 million of users

HostGator.com WHOIS, DNS, & Domain ... Page 1 of 9

You are logged in as uzg451tul_1364    LOG OUT



# DOMAINTOOLS

**WHOIS LOOKUP**

hostgator.com

> 🔍

**MENU**

Home  >  Whois Lookup  >  HostGator.com

## Whois Record for HostGator.com

How does this work?

**Domain Available**

---

## HostGator.com is for sale!

The owner of the domain you are researching has it
listed for sale.

---

Buy HostGator.com

---

**— Whois & Quick Stats**

| | |
|---|---|
| **Email** | abuse@enom.com is associated with ~11,405,362 domains ywsypdlk@whoisprivacyprotect.com |
| **Registrant Org** | WHOIS PRIVACY PROTECTION SERVICE, INC. was found in ~879,242 other domains |
| **Registrar** | ENOM, INC. |
| **Registrar Status** | clientTransferProhibited |
| **Dates** | Created on 2002-10-22 - Expires on 2015-10-22 - Updated on 2014-08-13 |



HOSTGATOR BILLING LOGIN


**HostGator**
we eat up the competition

Toll Free: **1.866.96.GATOR**
Local: **1.713.574.5287**
Now hosting over 9,000,000 domains!

LIVE CHAT

WEB HOSTING | RESELLER HOSTING | VPS HOSTING | DEDICATED SERVERS | DOMAINS | SUPPORT | AFFILIATES

# Unlimited Web Hosting
*Web Hosting made EASY and AFFORDABLE!*

- ✓ UNLIMITED Disk Space
- ✓ UNLIMITED Bandwidth
- ✓ EASY Control Panel (**Try Demo**)
- ✓ 1-CLICK Script Installs
- ✓ $100 Google AdWords Offer

- ✓ 4,500 Free Website Templates
- ✓ 99.9% Uptime Guarantee
- ✓ 45 Day Money Back Guarantee
- ✓ 24/7/365 Technical Support

Get
**20% OFF**
now!

Starting at only
**$3.96**/mo



**View Web Hosting Plans**

## Reseller Hosting
Make money with your own web hosting business!

STARTING AT
**$19.96***/mo


**WHM**

**View Reseller Plans**

## VPS Hosting
Get dedicated functionality without the expense!

STARTING AT
**$9.98***
First Month

**VIRTUOZZO**

**View VPS Plans**

## Dedicated Servers
Feel the power and flexibility of a HostGator dedicated server!

STARTING AT
**$139***
First Month


**DELL**

**View Dedicated Plans**

## Creating a new website?
Get started building your website in 3 easy steps:

1. Login to Weebly Website Builder
2. Select a website template & add content
3. Publish to your web hosting account

## Coming from another host?
We know how difficult it can be moving to another web host.


- Free Domain Transfer!
- Free File Transfers!
- Free Database Transfers!
- Free Script Transfers!

*We handle the transfer process for you!* View Details



We have received many awards in our 11+ years of providing web hosting services.

View All Awards

## About HostGator Web Hosting...

Since its establishment in 2002, HostGator has been a world-leading provider of web hosting service. Although our headquarters is in Houston, Texas, we provide top-notch service to clients from over 200 countries internationally with our staff of over 750 employees. We offer **Shared**, **Reseller**, **VPS**, and **Dedicated** server packages for both beginners and professionals alike. Each of our shared Web Hosting plans includes 24/7/365 support, a 99.9% uptime guarantee, and a 45-day money-back guarantee. If you would like to learn more, please visit **our company page**

*Pricing reflects a discount on first invoice only*



### Our Services
Web Hosting
Reseller Hosting
VPS Hosting
Dedicated Servers
Domain Names
Application Hosting
Windows Hosting

### Help and Support
Support Portal
Video Tutorials
Forums
Ticket System
Billing System
Live Chat
Registry Rocket

### Company
About the Company
Management Team
Network Datacenter
Awards & Reviews
Press & Media

Company Blog
Contact Us
Affiliates
Careers

### Legal
Terms of Service
Privacy Policy
Copyright
Subpoenas

Copyright © 2002-2014 HostGator.com Web Hosting | Sitemap        **Follow us:**

# EXHIBIT

# IP: 50.22.194.100

# Static.Reverse.Softlayer.Com



You are logged in as  uzg451tul_1364      LOG OUT

# DOMAINTOOLS

**WHOIS LOOKUP**

50.22.194.100

🔍

**MENU**

Home  >  Whois Lookup  >  50.22.194.100

## IP Information for 50.22.194.100

**▬ Quick Stats**

| | |
|---|---|
| **IP Location** | 🏴 United States Dallas Abuse Administrator |
| **ASN** | 🏴 AS36351 SOFTLAYER - SoftLayer Technologies Inc.,US (registered Dec 12, 2005) |
| **Resolve Host** | 50.22.194.100-static.reverse.softlayer.com |
| **Whois Server** | whois.arin.net |
| **IP Address** | 50.22.194.100 |

```
NetRange:       50.22.0.0 - 50.23.255.255
CIDR:           50.22.0.0/15
OriginAS:       AS36351
NetName:        SOFTLAYER-4-9
NetHandle:      NET-50-22-0-0-1
Parent:         NET-50-0-0-0-0
NetType:        Direct Allocation
RegDate:        2010-11-01
Updated:        2013-07-12
Ref:            http://whois.arin.net/rest/net/N
ET-50-22-0-0-1

OrgName:        SoftLayer Technologies Inc.
OrgId:          SOFTL
Address:        4849 Alpha Rd.
City:           Dallas
StateProv:      TX
PostalCode:     75244
Country:        US
RegDate:        2005-10-26
Updated:        2013-02-20
Ref:            http://whois.arin.net/rest/org/S
OFTL
```

```
ReferralServer: rwhois://rwhois.softlayer.com:43
21

OrgAbuseHandle: ABUSE1025-ARIN
OrgAbuseName:   Abuse
OrgAbusePhone:  +1-214-442-0601
OrgAbuseEmail:  abuse@softlayer.com
OrgAbuseRef:    http://whois.arin.net/rest/poc/A
BUSE1025-ARIN

OrgTechHandle: IPADM258-ARIN
OrgTechName:   IP Admin
OrgTechPhone:  +1-214-442-0601
OrgTechEmail:  ipadmin@softlayer.com
OrgTechRef:    http://whois.arin.net/rest/poc/IP
ADM258-ARIN

RAbuseHandle: ABUSE1025-ARIN
RAbuseName:    Abuse
RAbusePhone:   +1-214-442-0601
RAbuseEmail:   abuse@softlayer.com
RAbuseRef:     http://whois.arin.net/rest/poc/ABU
SE1025-ARIN

RNOCHandle: IPADM258-ARIN
RNOCName:   IP Admin
RNOCPhone:  +1-214-442-0601
RNOCEmail:  ipadmin@softlayer.com
RNOCRef:    http://whois.arin.net/rest/poc/IPADM
258-ARIN

RTechHandle: IPADM258-ARIN
RTechName:   IP Admin
RTechPhone:  +1-214-442-0601
RTechEmail:  ipadmin@softlayer.com
RTechRef:    http://whois.arin.net/rest/poc/IPAD
M258-ARIN

NetRange:       50.22.194.96 - 50.22.194.127
CIDR:           50.22.194.96/27
OriginAS:
NetName:        NET-50-22-194-96
NetHandle:      NET-50-22-194-96-1
Parent:         NET-50-22-0-0-1
NetType:        Reassigned
RegDate:        2014-04-25
Updated:        2014-04-25
Ref:            http://whois.arin.net/rest/net/N
ET-50-22-194-96-1

CustName:       Abuse Administrator
Address:        303 S Broadway Suite 200-341
City:           Denver
StateProv:      CO
PostalCode:     80209
Country:        US
RegDate:        2014-04-25
Updated:        2014-04-25
```

```
Ref:             http://whois.arin.net/rest/custo
mer/C05006980

OrgAbuseHandle: ABUSE1025-ARIN
OrgAbuseName:   Abuse
OrgAbusePhone:  +1-214-442-0601
OrgAbuseEmail:  abuse@softlayer.com
OrgAbuseRef:    http://whois.arin.net/rest/poc/A
BUSE1025-ARIN

OrgTechHandle: IPADM258-ARIN
OrgTechName:   IP Admin
OrgTechPhone:  +1-214-442-0601
OrgTechEmail:  ipadmin@softlayer.com
OrgTechRef:    http://whois.arin.net/rest/poc/IP
ADM258-ARIN

RAbuseHandle: ABUSE1025-ARIN
RAbuseName:    Abuse
RAbusePhone:   +1-214-442-0601
RAbuseEmail:   abuse@softlayer.com
RAbuseRef:     http://whois.arin.net/rest/poc/ABU
SE1025-ARIN

RNOCHandle: IPADM258-ARIN
RNOCName:    IP Admin
RNOCPhone:   +1-214-442-0601
RNOCEmail:   ipadmin@softlayer.com
RNOCRef:     http://whois.arin.net/rest/poc/IPADM
258-ARIN

RTechHandle: IPADM258-ARIN
RTechName:    IP Admin
RTechPhone:   +1-214-442-0601
RTechEmail:   ipadmin@softlayer.com
RTechRef:     http://whois.arin.net/rest/poc/IPAD
M258-ARIN
```

## Tools

| Monitor Domain Properties | ▼ |
|---|---|

| Reverse IP Address Lookup | ▼ |
|---|---|

| Network Tools | ▼ |
|---|---|

Home

Contact Us

Blog

Terms of Service

Privacy Policy

Domain News

# EXHIBIT

Email over slowed down server



susan g <sgench@gmail.com>

## unacceptable service: frequent server downtime, too slow response time
1 message

**OnlineTutorForEnglish** <sgench@onlinetutorforenglish.com>    Thu, Jun 9, 2011 at 7:39 AM

To: support@hostgator.com

To Whom It May Concern,

Please note the conditions of the server, high frequency of incessant down times, too slow response time, are unacceptable as I've reported already several times in the past. Nothing has improved. Google reports your server is slower than 72 percent of other comparable servers. The server must be up and running all the time; when there is an occasional downtime I need to be informed in advance, which I can only accept for maintenance purposes and once in a while. I'm paying $15/month for a shared server and, in return, I expect a decent service. This is my last request, and if these conditions continue, I will close my account with Host Gator.

Sincerely,

Sue Gench
http://onlinetutorforenglish.com

# EXHIBIT

## *Hostgator*'s partner, Softlayer



**HostGator**
we eat up the competition

WEB HOSTING    RESELLER HOSTING    VPS HOSTING    DEDICATED SERVERS    DOMAINS    SUPPORT    AFFILIATES

Toll Free: **1.866.96.GATOR**
Local: **1.713.574.5287**
Now hosting over 9,000,000 domains!

HOSTGATOR BILLING LOGIN

LIVE CHAT

## Support Portal
24/7 Live Technical Support and Documentation

Search    [-]

Support Portal Home » Hosting Guide » Hardware & Software » **HostGator Data Centers**

## HostGator Data Centers

HostGator.com currently uses more that one data center to house our servers. Most of our servers reside in Provo, Utah or Dallas, Texas, with some residing in Houston, Texas and other locations. You can optionally activate CloudFlare, which would route your content through an additional 23 data centers worldwide.

## Data Centers

Our current Data Center Partners include:

- **Ace Data Centers**
  - Provo, Utah
- **SoftLayer** and **CyrusOne**

**Browse by Topic**

- Pre-Sales & Policies
- Hosting Guide
- cPanel
- WebHost Manager (WHM)
- Plesk
- SSL Certificates
- Specialized Help
- Offers & Bonuses
- Website Design
- Affiliates

**Helpful Resources**

- Account Addons
- Billing System
- HostGator Blog
- HostGator Forums
- Video Tutorials
- Contact Us

**Interact and Engage**